I'm going to call the case of United States v. Mr. Tercier and yeah I know we've got experienced counsel you're familiar with the lighting system and I'm going to enforce it maybe not as harshly as some people but I'm going to enforce it so with that Mr. Hersey good morning good morning may it please the court my name is Michael Hersey and I'm here for appellate Muller Tercier I would like to and I've reserved five minutes for a bow I'd like to start with argument one I think that's one of the more consequential arguments as far as what this court might do to set these things right and argument one I basically argue that the government knew or should have known that the information they had about the September 26 2014 alleged one kilo delivery by co-defendant Lavalier to my client Mr. Tercier did not really happen and the reason that's important is that this was a conspiracy charge and there were no seizures of drugs or cash proceeds of drugs from my client so this is the one time in the five-month investigation that the government alleged that there was actual cocaine in his hand but I would suggest to the court that when you look at it and the government is presumed to know its case that the evidence even from the government's transaction did not take place as far as my client is concerned one of the main reasons we can see that is that this alleged event was under surveillance by agents they had followed mr. Lavalier the co-defendant that morning and they had my clients auto body shop under surveillance they had agents there and one agent even said he could see directly into the auto body shop now they had photos of everyone else that was there but no photos of my client and there was no photo of the actual transfer of the drugs even though the agent said that that it was possible for him from his vantage point to see it he said he was not able to take photos because the transaction took place within about three or four seconds and the thing that makes that important it might just be an explanation for why they did not do it another explanation is my client is not there there is a conversation later at 5 o'clock that day this is again September 26 2014 because the charges weren't brought until about three years after these events where my client is talking to mr. Lavalier and the Walgreens situation wasn't that at 5 5 11 p.m. and the transaction that the agent was unable to take a picture of wasn't that at like 120 in the afternoon that's according to the government that's what they argued but as I pointed out and the initial brief and a reply brief the government got days wrong as they had September 26 listed in one point as a Thursday where it's actually a Friday and then in my reply brief I put in there for you to see exactly a sequence on that same day of the session numbers like the surveillance that they did the wiretaps and the time that the government attributed to that and those were out of sequence too and as a matter of fact there's like a four minute gap missing this is the the transcripts or the actual audio that would be the transcript it would be there or what I'm talking about judges the out-of-sequence events would be in the government listing of the session number like the call number and the time that that took place so again there's another wiretap that's at 8 o'clock that night 8 p.m. this is the same day and my client and mr. Lavalier are talking again and my client mr. Lavalier says oh I haven't seen you since 10 o'clock this morning same day again not saying that he was there at 1 20 with my client and if I can just be real for one second you can be real drop the lawyer just for a second who better is going to know if mr. Lavalier and my client were involved in the drug deal that day a transfer those two individuals are mr. Lavalier and keep in mind he was a cooperating co-defendant trying to get a reduced sentence as every reason to put my client on the bus he's asked about that you cross-examined him correct he was mr. Lavalier was cross-examined cross-examined vigorously that's right and he was asked on direct examination did you mr. Lavalier give mr. Tresier drugs on September 26 120 and he said you know he's cooperating trying to get a reduced sentence I don't know I can't remember if it was drugs or money or whatever he just could not remember and I would suggest to you as a former assistant United States attorney right here in Miami that's about as good as it gets from a cooperating defendant when he's asked about the only specific drug transaction and the government's conspiracy where there's supposed to be a hand-to-hand so I don't know respectfully mr. Hersey I mean you know it might be as good as it gets you know from a from a criminal defendants standpoint and and I respect the argument you're making but the jury heard it and the jury rejected it so you know it limits our ability to to you know adopt your view on appeal yes well keep in mind is that this was a conspiracy it was one count conspiracy charge that conspiracy charge could still lie even without this transaction so the reason I say this is important is that this was the only time in the government's whole case and in their whole investigation that there was an hand-to-hand transaction because otherwise it's just conversations with my client so I would respectfully suggest judge Martin that the girl that the jury could either accept or reject the September 26 transaction that I'm talking about and still find him guilty of conspiracy because there were other conversations that they could see or could infer were about drugs why doesn't why doesn't that tie our hands even more well because if the government knew or should have known that that transaction did not take place they should not have been talking about that in their opening statement and in their closing arguments and I cited cases in the brief to say if the government knew or should have known that there was either perjury or statements that weren't true and they capitalized on it meaning use it in their opening or closing and that can be seen to have an effect on the jury verdict that that denies my client the fair trial what kind of what kind of evidence do you have to show that the government knew or should have known as opposed to you could look at this evidence one of two ways and we think maybe maybe the government thought a different a different thing happened in reality and just I thought about that too I said I bet they're gonna ask me the standard here so here's what I think the classic would be you have the smoking gun oh there was a recording that the government didn't know is being recorded oh we know that they there really isn't this transaction but we're going to do it anyway we do not have that here what we have to travel on here judge is that the government is presumed to know its case in and out because they had a five-month investigation they review the evidence etc so if they know or should have known by what I just showed you that there was not evidence to show that mr. Lavalliere delivered this to my client they should not have posed that in opening statements or closing arguments that doesn't mean they can't put on some evidence of that whatever they have but they should have acknowledged all these things that I listed and and they're presumed to know their case and they shouldn't have been pushing that this one time there's this hilarious hand-to-hand transaction so with that unless there are any other questions I'd like to go to the Batson issue quickly the argument number two is the Batson issue I hope that the court looks very seriously at this because Batson is something that dramatically affects jury makeup equal protection right to the jury trial etc etc etc and here we had a case where my client is an African American of Haitian descent all the co-defendants were of Haitian descent but cocaine allegedly came from Haiti events happened in little Haiti in Miami and the one juror that was identified as I mean do we I mean you could be called Rodriguez but that doesn't mean that you are Hispanic it certainly does not here's what I wouldn't refer you back to though the government said after the Batson challenge was issued oh I assume you're doing that because of the surname that he's Haitian yes and the government the defense and the court traveled on that during the whole analysis why did there's no when judge Altanaga called back the veneer person and asked and they conducted further examination of the potential juror defense counsel at that time did not ask him or did not clarify that in fact he was Haitian American was there an obligation to do so it would have made it a lot easier for me right now understand right now every time I read I say come on ask him ask him but they did not but I would suggest to the court though that after the statement was made by both the defense attorney and the government oh you're assuming he's Haitian American because of the surname the questions and answers and the courts inquiry travel on that assumption I would ask you to use that now because the record does not state that specifically but the parties and the otherwise the inquiry would not have made sense if you had just been a regular there's no there's no jury questionnaires in the record I didn't see any and no I don't remember there being any even that would have helped as well because there are other cases where this issue comes up and that is a big help but I'd ask you to look at that because the lawyers would say that the public integrity and confidence and the jury verdict is dependent upon these things but common sense is and I've talked to other people I go up to them and say there was a case where I had a Haitian American mr. Hurt so you're over your time and I and I realize that if I could just borrow this other 20 seconds and I'll yeah forfeit that on rebuttal we'll give you your time on rebuttal but if you would wind it up that would okay I sure will thank you if when I go and talk to my colleagues or if somebody that's a non-lawyer and so I have a case where a Haitian American defendant was on trial and the only person of Haitian American dissent was struck by the government everybody kind of chuckles because you can kind of see what's going on there you don't have to be a rocket science to see that we would I would ask the court to apply that type of common sense to this decision on the Batson thank you. Thank you. Mr. Wu, good morning. Good to see you again. May it please the court, Jason Wu on behalf of the United States. With me at council table is Jonathan Kabrinsky with whom I tried the case in the district court. The government wholeheartedly agrees that every defendant is entitled to a trial free of racial discrimination and of perjured or willfully false testimony and that's exactly what Mr. Tercia received here a fair trial and his claims to the contrary are unsupported by the record and I think a perfect example is the first claim that he raised today which is a Giglio or Brady style claim that the government utilized perjured testimony in its case. One of the panel members asked about the standard of review here and I do think that's very important. Because Mr. Tercia did not raise this claim below either during the trial or in the form of a motion for new trial this claim is reviewed for plain error only and this goes to the question or the point that Judge Grant was making which is it seems like there are two different views of the evidence here. There's a view that was adopted by the government and accepted by the jury when they found the defendant guilty and there's a view that's essentially a jury argument reiterated by the defendant here which is that you can't trust the government witness detective below and that this transaction didn't happen. But just merely giving a jury argument on appeal does not demonstrate plain error. Certainly does not demonstrate that it's plain clear as day that this offer officer perjured himself. And taking a step back just looking at the overall body of evidence we have in the case it strongly supports and corroborates the officer's testimony. The easiest place to look for this is government's exhibit 16A. That's a demonstrative timeline that we used at trial and it's helpful because it cites some of the other evidence in the record. And in particular the timeline of September 26 is important because it shows a pretty clear shift in the conversations between Mr. Tercier and his main co-conspirator and supplier Mr. Lavalier. So at the beginning of the day and throughout the early half of the day Mr. Tercier keeps calling Mr. Lavalier and pressuring him for a delivery. At one point around noon he even says he has people who are about to kill him because they've been here yesterday. In other words he has customers waiting. And Lavalier replies that his source which is Mr. DuRousseau another witness at trial gave me the two this morning. And our interpretation of that and what the jury apparently endorsed is that that was two kilograms of cocaine. Now as this pressure continues eventually Lavalier tells Tercier that he's going to leave in about 15 minutes and indeed our verifies that about 20 minutes later Lavalier does leave his home and goes to Mr. Tercier's body shop. After that point if you look at the contents of the phone calls the dynamic completely flips between the two men. Instead of Tercier pressuring Lavalier it's Lavalier who's calling Tercier and pressuring him for payment. He calls him repeatedly trying to schedule another meeting later in the day asking for money. He says just give me the people's money. Why are you guys taking so long essentially? I gave you these effectively implicitly he's saying I gave you the drugs already now I'm expecting my payment. And significantly at 847 p.m. this is intercept 623 he even asked Tercier about his progress on some project. He asked y'all finish and Tercier replies on one the other one in a little bit. And a lot of their conversations later seem to center around two things that Tercier has and a problem with one of those things which is that it's underweight. It weighs less than he expected. So the overall sequence of those conversations is crystal clear that before 1245 Tercier is waiting on a delivery of two items from Lavalier. And then around after that point by the later evening Lavalier is expecting payment from Tercier for something. And that strongly corroborates the mobile surveillance officer's testimony Detective Veloz who said that he trailed Lavalier followed him and that as soon as Lavalier arrived at the body shop he saw Lavalier pass a brownish orangish package to Mr. Tercier. Did Mr. Lavalier also testified as to the the meeting correct? He testified to the meeting my colleague is correct that at trial you know this is of course three years later he did not remember whether on that day there was payment made or whether it was drugs but he agreed that he had met with Tercier and he testified that as to the specific conversations played for him he agreed they were about a cocaine transaction. So in other words he identified like when they were talking about two he said at trial this is about two kilograms of cocaine. And when he the subsequent conversations are about payment and about one of the items being underweight being 945 he testified that meant that the kilogram did not in fact weigh a If there are further questions about that if there are no further questions about that I'll move on to the Batson issue if that's helpful. So regarding the Batson issue again standard review here is very important this claim is reviewed for clear error because the Batson challenge is ultimately resolved by a finding a factual finding by the district court that the government did not act out of discriminatory intent and so here on appeal he has to show you that that was clearly erroneous he has to leave you with a firm and definite impression that the record shows otherwise. One of the reasons given by the government for striking this juror potential juror was that he was a student. Correct. I believe it may be correct me if I'm if I'm wrong but I thought that prior to that challenge there was also another person who was a student who was going to be in finals and that person was also stricken from the jury panel. I actually do not believe that's correct my impression was this was the only student on the panel so earlier in the in the voir dire around pages 39 to 40 the judge asks a juror who is this juror number 17 about his class schedule and about whether he can accommodate it and that's at the point when we you know that's the only point in the record where a student is object of the Batson challenge juror number 17. You know from my standpoint it seems like to me the defendant made a prima facie case you know as Batson requires and then in turn the government you know offered this race neutral reason for for striking but it seemed like to me the third step never happened because it that requires the the trial court to determine whether the person challenging the strike has shown purposeful discrimination. I mean I guess we assume that the court decided that hadn't happened but there was really no finding was there I mean it just seemed to drop off right after the second step to me. Do you disagree? I do disagree with that your honor and so the sequence of events is that after the government at step two offered our explanation which was our reason for striking the juror the judge said okay in that case let's bring the juror in and let's ask them a few more questions. To me that's step three that's saying I'm going to give another opportunity for the defense counsel to develop it. The presentation of the the evidence is all that needs to happen when the as I understand the rule it says the trial court must determine you know whether there's been purposeful discrimination. I agree with that and the trial court did make that finding so if I could finish the sequence. Okay sorry. No I apologize so after the questioning of the juror. Occupational hazard. No no worries so my understanding is the trial court was giving the defendant every opportunity to create the record so the trial court brought the juror back in said you can ask whatever questions you want we both asked our questions and then again the defendant failed to elucidate number one that this defendant was actually Haitian American relying solely on the surname assumption or heuristic and secondly there was no attempt to question other jurors or identify the ethnicity of other jurors and our belief is using that same last name heuristic of course there were probably other Haitians on the juror but at the conclusion of that the district court said and I'll quote it I do find the government has provided sufficient reason to exercise a peremptory with regard to this juror number 17 and has provided a race-neutral reason and to me that goes beyond just saying government you've satisfied step two this is after there's been a complete opportunity to make a record. We may part ways on that I mean I guess she has to do is say government has shown a non-discriminatory reason for the strike and that ends the Batson? But it's more than that it's the word sufficient because to me sufficient means this is a good enough reason it's a reason that's appropriate under the law I don't think a reason that conceals or masks discriminatory attempt. Is the trial court required or the district courts I mean do they have to articulate findings of fact as to why that there is they find that there is not a discriminatory reason? Not expressly and in fact in cases like Ochoa Vasquez which we cite in our brief in Atwater I think the courts say that it's enough that there's sort of an implicit finding I think the exact language that the trial court in the Atwater case used was something like I find there's a supportable reason which to me is very similar to Judge Altanaga in this case saying that there was a reason that's acceptable under law a non-discriminatory reason which we had offered to. Moreover even just looking at the record and looking at all the factors that might bear upon a finding of discriminatory intent this case is about the farthest thing from a legitimate Batson challenge that I could find and I cited the Flowers case in our supplemental authority just because it had that helpful bullet point list of the factors and I'm happy to run through some of them but for instance number one I mean these are all familiar to the court but number one is what the Flowers court called a statistical evidence or a pattern of strikes. Here this is only one strike so already there's no pattern but moreover we have multiple other jurors who fit the same criteria meaning that they're African-American. Is it your position that the government could in fact strike somebody for discriminatory reasons but if they only did it once then there's no Batson violation? No no I'm going to a different point now your honor I'm going to circumstantial evidence of discriminatory intent obviously if the government strikes a single person but in fact harbors the intent that's impermissible under Batson. I'm saying when we're looking at this question when the district court is trying to determine did the government act out of discriminatory intent the existence of a pattern is highly probative and the district court didn't say whether she considered that but the pattern is apparent in the record I would argue because there are other jurors who bear the exact same characteristics as the stricken juror in other words they're African-Americans with French last names. There are two jurors that we reached before this point and I won't say their full names in court but one was named Riviere and the other was named Breville who are both also identified as African-Americans and who may well have been Haitian. I don't want to make that assumption but it's the same rule that the defense is urging as to this stricken juror. Mr. Wu can I ask you a question because this is where I was confused in the record on page 76 of that transcript of November 29th it says juror 43 and Mr. Kobrynski asked for to strike that person and Mr. Moss asked what's the basis the court he has final exams and then also an exit exam and so he is stricken or she is stricken I don't know who the juror is was that also a student? Oh I see what you're saying. Sorry I thought we were talking about the peremptories whether another peremptory had been used on a student. Yes that that was someone later in the sequence but was stricken before for cause reasons in other words because they had a clear scheduling conflict. This juror we did not attempt to strike for cause because they had not claimed that they had a scheduling conflict we were just merely concerned about the youth and inexperience of that particular juror. But going through briefly some of the other factors again if we look at side-by-side comparisons there's no other student you know ideally I think what they would show to their view of the case would be if they could find another student who was white or non-Haitian no such student exists on the panel who was allowed to remain on the jury. Other factors that are relevant of course are the fact that the government left strikes on the table I think this is a big one so we use three strikes to get to the 12 jurors who sat on the Pettit jury and ultimately determine this case. If we had been so determined to strike people that might have been Haitian based on a last name or something as simple as that we easily could have stricken other jurors including jurors number four and nine who sat in this case who had the exact same characteristics African-Americans with French last names. If there are no further questions on this issue the government respectfully asks that this court affirm on both issues and affirm his convictions and sentence. Thank you. Judge Martin I think you hit the nail on the head when you said that the trial court gave this short shrift and that's the exact language that Batson talks about as far as this analysis that the trial court supposed to use and Judge give the reasons for finding that there was a non-discriminatory intent and I would suggest case law strongly says yes and when you go back and caucus on this case please keep this in mind because we're having so many problems with step three at the trial level and I think if trial judges appreciated this a little bit more we'd have a little bit more participation. When you when you say case law clearly says yes can you tell me what cases you're referring to because I I agree that from the trial judge might like to protect themselves by saying and now under my obligation to consider step three I make the following determination but I'm not aware of a case that requires that type of an explicit statement. Okay and I cited a couple of them in the brief and I talked about the short shrift they're not coming to me at this second by am I looking at my notes oh well in the Atwater versus Crosby case and that's at page 22 of my initial brief at ATWATER the court there noted that the when the judge merely repeats the proponents reason for exercising the strike the judge has not satisfied the third part of the Batson inquiry and Judge Lagoa that goes back to what you said if you go back to a document 381 page 87 and I cite that in my brief to document 381 page 87 the judge just basically repeats oh yeah the government gave good reasons what she could have done was to say okay here is what the government has done in this case here's what I perceive as whether or not this person is Haitian-American here's what the defense is asking here are other similarly situated. Counsel may I ask you a question that what is what do we do with jurors four and nine because juror four is Marie Rivere and juror nine is Andrea Breville how do we handle that because if those two jurors who sat on the panel are African Americans with French last names why should we not presume that they are Haitian Americans? Because the record silent as to this juror? No. How is it not? Because of the comment. You can't have it both ways. Well and I agree with that judge but with those other two or three jurors that the government said were African American there was no dispute on that but they also did not say oh and they might be of Haitian descent. Contrast that with juror number 17 the one that's at issue here where there is comment on the record right after Mr. Moss makes the objection the government asks oh I assume you're doing that because of the surname did you're assuming he's Haitian and Moss says correct so from that point forward the judge the government and the defense are traveling on the theory that this juror number 17 is of Haitian descent as opposed to the silence of the record on the other three or four we just don't know maybe they were maybe they weren't because there's some black people that have French last names that are not of Haitian descent. Isn't that isn't that same thing true of this particular veneer person since no one actually asked whether he was of Haitian descent? Maybe he was maybe he wasn't. Judge Grant I completely agree I wish they had asked because I think that the answer would have been favorable to me but they did not ask but the question and answer from the defense and the government were such that both parties and the court traveled on that theory after those comments and that's the difference between juror number 17 and the other three or four where there was no mention or no question by either the court or either party of their Haitian descent or not and remember this is important because there were Haitian Creole transcripts idioms the culture there and that has a dramatic impact on how this trial is perceived I would say by the public. So with that I would ask that you reverse and either remand for a new trial or at least for a new sentencing hearing. Thank you. Thank you. Always nice to see you both.